**United States District Court**
**For The District of Columbia**

| | |
|---|---|
| **United States of America,** <br><br> v. <br><br> **Andrew Alan Hernandez,** <br><br> Defendant. | Case No. 21-cr-445 (CKK) |

**Emergency Motion to Reduce Sentence**

Andrew Alan Hernandez, through counsel, respectfully moves this Court to reduce his term of imprisonment from 18 months to time served (thereby modifying his projected release date from February 19, 2024, to February 1, 2024), due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). The government has indicated that it opposes this motion on the ground that he does not qualify under the violence prong of the criteria (discussed more fully below). Given that Mr. Hernandez's projected release date is currently February 19, 2024, and he seeks a modification to February 1, 2024, he respectfully requests that the Court rule on this matter on an expedited basis.

On September 21, 2022, Mr. Hernandez pled guilty to aiding and abetting obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and (2) for his actions related to January 6, 2021. *See* Plea Agreement, ECF No. 47. At the time, the U.S. Sentencing Guidelines recommended 15 to 21 months' imprisonment, as he had a total offense level of 14 and zero criminal history points. *See* PSR ¶ 69. On February 6, 2023, this Court sentenced Mr. Hernandez to 18 months' imprisonment—amounting to a middle of the guideline sentence.

1

*See* Judgment, ECF No. 59. He is projected to complete his prison sentence on February 19, 2024.[1]

After his sentencing, the Sentencing Commission retroactively amended the sentencing guidelines to reduce the total offense level by two points for defendants without any criminal history points, so long as they meet certain criteria:

1. the defendant did not receive any criminal history points from Chapter Four, Part A;
2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
3. the defendant did not use violence or credible threats of violence in connection with the offense;
4. the offense did not result in death or serious bodily injury;
5. the instant offense of conviction is not a sex offense;
6. the defendant did not personally cause substantial financial hardship;
7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

U.S.S.G. § 4C1.1(a). This amendment is commonly referred to as Amendment 821, part B.

Mr. Hernandez meets all the above criteria. He has zero criminal history points, *see* PSR ¶ 37; he did not receive any adjustment for terrorism; the offense did not result in death or serious bodily injury; the offense was not a sex offense; he did not possess a dangerous weapon; he did not personally cause substantial financial hardship; the offense of conviction is not covered

---

[1] *See* Bureau of Prisons, *Inmate locator*, available at https://www.bop.gov/inmateloc/ (reporting an individual's projected release date).

2

by §2H1.1; he did not receive any adjustments under §§ 3A1.1 or 3A1.5; and he did not receive a § 3B1.1 adjustment and engage in a continuing criminal enterprise.

The government conveyed to counsel that it believes Mr. Hernandez is ineligible for a sentence reduction because Mr. Hernandez does not meet the criteria that he "did not use violence or credible threats of violence in connection with the offense." *See* U.S.S.G. § 4C1.1(a)(3).  The government is wrong—and this Court's prior sentence demonstrates it.  If the Court (or U.S. Probation Office) believed that reliable evidence suggested that Mr. Hernandez had used violence or credible threats of violence, then it would have applied the obstruction of justice enhancement in U.S.S.G. § 2J1.2(b)(1)(B).  Tellingly, it did not.  This provision provides for an eight-point enhancement "*[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage*, in order to obstruct the administration of justice." *Id.* (emphasis added).  The guideline lists the statutory provisions to which this enhancement applies, and that list includes 18 U.S.C. § 1512—which Mr. Hernandez was convicted of in Count 1.  There is only one reason for why the Court did not apply this enhancement: Mr. Hernandez did not use violence or credible threats of violence in connection with his offense. [2]

Thus, this issue has largely been already decided by this Court and comports with what other courts in this district have found.  *See, e.g.*, Sent'g Tr. in *United States v. Wood*, No. 21-cr-223 (APM), ECF No. 64 (finding § 2J1.2(b)(1)(B) did not apply to individual waiving a flag in the face of police officers who was arguably part of a group involved in pushing officers); Sent'g Tr.

---

[2] This Court has held that the obstruction of Congress's certification of the Electoral College vote satisfies the "administration of justice" requirement under U.S.S.G. § 2J1.1(b)(1)(B). *See United States v. Wright*, 21-341 (CKK), 2023 WL 2387816, at *5 (D.D.C. Mar. 4, 2023).  Hence, there can be no genuine argument that the "administration of justice" requirement is why U.S.S.G. § 2J1.1(b)(1)(B) did not apply to Mr. Hernandez's case.

3

in *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM), ECF No. 120 (rejecting enhancement where defendant (i) told others to "Advance, advance, advance"; (ii) was present near a scuffle between an officer and another individual and tried to grab the individual out of the officer's grasp; (iii) picked up and moved bike rack barriers; and (iv) was part of the crowd that climbed stairs on the right of the Senate wing door); Sent'g Tr. in *United States v. Brock*, No. 21-cr-140 (JDB), ECF No. 112 (finding enhancement did not apply where defendant made violent statements leading up to January 6 and noting the enhancement "is meant for the specific special circumstance of where someone actually engages in or is on the scene threatening physical injury or property damage"); *see also* Sent'g Tr. in *United States v. Cua*, No. 21-cr-107, ECF No. 372 at 20, 27 (finding a defendant who waived a baton at an officer while pushing him with other rioters "just barely clears the threshold of having threatened the officer," while contrasting Cua with others who "stand there passively while this was all going on and while the officer was being attacked").

      While there are textual differences between U.S.S.G. § 2J1.2(b)(1)(B) and § 4C1.1(a)(3), those differences only further support Mr. Hernandez because U.S.S.G. § 2J1.2(b)(1)(B)'s violence component is far broader than § 4C1.1's. U.S.S.G. § 2J1.2(b)(1)(B) requires only that the "*offense involve*" violence or the threat of physical injury, whereas § 4C1.1 requires that "*the defendant*" not "*use* violence" or "credible threats of violence" in connection with the offense. In other words, unlike § 2J1.2(b)(1)(B), § 4C1.1(a)(3)'s criteria is defendant-specific; it requires the defendant himself, and not others in the crowd, "*use* violence or credible threats of violence in connection with the offense." *Accord United States v. Hernandez-Barajas*, 71 F.4th 1104, 1106-07 (8th Cir. 2023) (interpreting similarly-worded threats provision at U.S.S.G. § 2D1.1(b)(2) and

4

concluding that the "sentence's subject, the doer of the action, is the defendant" and that "[g]rammatically speaking, the defendant is the one who must make the credible threat, even if it involves the potential use of violence by someone else"). That Mr. Hernandez did not qualify for the broader enhancement means that he is not disqualified under the far more narrowly worded provision at § 4C1.1(a)(3).

Moreover, to qualify as "using violence," one must "use[] physical force *with the intent to injure*[.]" *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (emphasis added) (interpreting U.S.S.G.§ 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a Guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary). And "credible threats of violence" require one to credibly "express an intention to inflict pain, harm, or punishment" through violence. *See Hernandez-Barajas*, 71 F.4th at 1107 (cleaned up) (interpreting U.S.S.G. § 2D1.1(b)(2) and quoting definition of "threats" from *American Heritage Dictionary of the English Language* 1813 (5th ed. 2016)). Even pushing of an officer—which Mr. Hernandez did not do—is not sufficient to satisfy these definitions where the defendant lacks the requisite intent to injure. *See United States v. Jaimes-Molina*, No. 17-cr-69, 2019 WL 4254459, at *5 (N.D. Ind. Sept. 9, 2019) (finding that even though defendant shoved officer, defendant lacked the intent for the act to qualify as a credible threat to use violence).

Given the above principles, Mr. Hernandez is eligible for a sentence reduction under U.S.S.G. § 4C1.1. He did not personally use or credibly threaten violence and had no intent to injure. On January 6, Mr. Hernandez attended the "Stop the Steal" rally, carrying a backpack and a U.S. flag on a pole with a Go-Pro camera attached. PSR ¶17. He walked around bicycle barriers at the Capitol once *others* had pushed them down; he was part of a crowd that made its

5

way up the Rotunda steps after *others* had breached the line of U.S. Police Officers; and he entered the Capitol after *others* had breached the East Rotunda door. *Id.* at ¶¶17-18. While *others* yelled "treason" in the Senate Gallery, Mr. Hernandez "took a few 'selfies'" and then left the Capitol. *Id.* at ¶19. None of these actions by Mr. Hernandez involves use of physical force with the intent to injure or any expression of an intention to inflict pain.

It is simply not enough that Mr. Hernandez was part of a crowd that was involved with "pushing" officers. *See* PSR ¶¶ 17 & 18. When faced with a similarly-situated defendant—one who the government claimed was very close to rioters who overran a group of officers—Judge Mehta determined he deserved a sentence reduction under U.S.S.G. § 4C1.1. *See United States v. Stewart Parks,* Case No. 21-cr-441 (APM), Sent'g Tr. at 10 (Nov. 15, 2023).[3] While recognizing that the provision was new, Judge Mehta assumed "it has to be based upon both the offense conduct and the related conduct":

> He hasn't been charged or convicted for anything that involves a physical harm. And to the extent that he, you know, did participate in the larger crowd, I just don't think, you know, his offense, again, you know, the adjustment speaks in terms of the offense did not result in death or serious bodily injury. The defendant did not use violence or credible threats of violence.
> …
> [N]otwithstanding what was conduct that clearly contributed to the chaos and the mayhem of the day and did so in a significant way, I just don't think any of the disqualifying factors here are applicable to his offense or to the related conduct[.]

*Id.* at 38-39. The same is true of Mr. Hernandez, whose conduct may have contributed to the "chaos and mayhem" but who did not himself use or credibly threaten violence.

---

[3] Mr. Parks is represented by the Federal Public Defenders in his appeal, Case No. 23-3222, and therefore, although it has not yet been uploaded to PACER in the underlying case, the Federal Public Defenders has the sentencing hearing transcript available as his appellate attorneys. Undersigned counsel can distribute the transcript upon request.

Because Mr. Hernandez is eligible under the criteria at § 4C1.1, this Court may reduce his sentence. Section 3582(c)(2) authorizes the Court to reduce a prison sentence imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Commission." *Id.*; *see also* U.S.S.G. § 1B1.10(a)(1). The Commission's applicable policy statements create two relevant limitations to granting a sentence reduction: (1) any reduction cannot go below the low end of the now-applicable guidelines' range, *see* U.S.S.G. § 1B1.10(b)(2)(A); and (2) any order reducing the term of imprisonment must have an effective date of February 1, 2024 or later, *see* U.S.S.G. § 1B1.10(e)(2); *id.* at application note 7.

Mr. Hernandez meets all the above criteria in U.S.S.G. § 4C1.1 and is eligible for a sentence reduction given that his original sentencing range (shown below on the left) has been subsequently lowered by the Sentencing Commission (shown below on the right):

|  | **Original Sentence** | **Application of Amendment 821 (Part B)** |
|---|---|---|
| Total offense level: | 14 | 12 |
| Criminal history points: | 0 | 0 |
| Criminal history category: | I | I |
| Guideline range: | 15-21 months | 10-16 months |
| Sentence: | 18 months | 13 months/ time served (proposed) |
| Projected release date: | February 19, 2024 | February 1, 2024 (proposed) |

As shown above, if Part B of Amendment 821 had been in force when Mr. Hernandez was sentenced, his guideline range would have been 10-16 months instead of 15-21 months.

Accordingly, Mr. Hernandez requests that the Court convert the middle-of-the-range guidelines' sentence he received under the old guidelines (18 months with a range of 15-21 months) to a middle-of-the-range guideline sentence under the now-applicable guidelines (13

7

months with a range of 10-16 months). Normally, this would amount to a five-month reduction. However, given that Mr. Hernandez's projected release date is February 19, 2024 and a six-month reduction would modify his release date to before February 1, 2024, he respectfully request that his sentence be reduced to "time served" with an order having an effective date of February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2). In effect, this would modify Mr. Hernandez's projected release date from February 19, 2024 to February 1, 2024, amounting to roughly an 18-day reduction.

    A proposed order is attached.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004

**Certificate of Service**

      I certify that on January 25, 2024, a copy of Defendant's Motion for a Sentence Reduction was served via electronic mail upon:

Jennifer Blackwell
Deputy Chief of the Criminal Division
United States Attorney's Office
Jennifer.Blackwell3@usdoj.gov

                                                                                      /s/
                                           JOANNA MUNSON PERALES
                                           Research & Writing Attorney
                                           Federal Public Defender's Office
                                           625 Indiana Ave, NW, Suite 550
                                           Washington, D.C. 20004