UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANDREW ALAN HERNANDEZ,

Defendant.

Criminal Action No. 21-445 (CKK)

**MEMORANDUM OPINION AND ORDER**
(January 31, 2024)

Pending before this Court is Defendant Andrew Hernandez's [62] Emergency Motion to Reduce Sentence ("Def.'s Mot."); the Government's [63] Response to Defendant's Motion ("Govt. Opp'n"); and Defendant's [64] Reply to the Government's Opposition ("Def.'s Reply"). Upon review of the pleadings, the relevant legal authorities, and the record as a whole, and for the reasons set forth herein, this Court GRANTS Defendant Andrew Hernandez's Emergency Motion to Reduce Sentence.

**I. BACKGROUND**

On September 21, 2022, pursuant to a plea agreement, Defendant Andrew Hernandez (hereinafter "Defendant" or "Mr. Hernandez") entered a plea of guilty to Count One, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. *See* Plea Agreement, ECF No. 47. Mr. Hernandez's offense level of 14, Criminal History I, and zero criminal history points resulted in a calculated sentencing guidelines range of 15 to 21 months imprisonment and a fine of $7,500.00 to $75,000.00. *See* Final Presentence Report ("PSR"), ECF No. 51 ¶¶ 24-37, 69-70. On January 30, 2023, this Court sentenced Mr. Hernandez to a term of 18 months incarceration, followed by 36 months of supervised release and ordered him to pay

1

restitution in the amount of $2,000.00 and a special assessment of $100.00. *See* Judgment, ECF No. 59.

Mr. Hernandez is currently incarcerated with a projected release date of February 4, 2024. After Defendant's sentencing, the Sentencing Commission retroactively amended the Sentencing Guidelines to reduce the total offense level by two points for defendants without any criminal history points, as long as they meet certain criteria:

> 1. the defendant did not receive any criminal history points from Chapter 4, Part A;
> 2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
> 3. the defendant did not use violence or credible threats of violence in connection with the offense;
> 4. the offense did not result in death or serious bodily injury;
> 5. the instant offense of conviction is not a sex offense;
> 6. the defendant did not personally cause substantial financial hardship;
> 7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> 8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
> 9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
> 10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaging in a continuing criminal enterprise, as defined in 21 U.S.C. §848.

U.S.S.G. §4C1.1(a). This Amendment is commonly referred to as Amendment 821, part B.

On January 25, 2024, Defendant filed the instant Motion requesting a reduction of his term of imprisonment from 18 months to time served, which amounts to a 3-day reduction in his sentence based on his February 4, 2024 projected release date. Defendant's request for a reduced sentence is based on application of U.S.S.G. §4C1.1, for which Defendant alleges that he "meets all the criteria." Def.'s Mot., ECF No. 62, at 2. The Government opposes Defendant's motion on two grounds: (1) that Mr. Hernandez is ineligible because he "does not meet all the criteria which are necessary" for application of U.S.S.G. § 4C1.1; and (2) even if eligible, the Court "should exercise its discretion under the 18 U.S.C. § 3553 factors" and deny the motion. Govt. Opp'n,

ECF No. 63, at 1. Defendant's Motion has been fully briefed and is ripe for resolution by this Court.[1]

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction in his term of imprisonment if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." A defendant's motion for reduction is evaluated in two steps. *United States v. Wyche*, 741 F.3d 1284, 1292 (D.D.C. Cir. 2014). Step one involves determining whether the defendant is eligible for a reduced sentence and, if so, calculating the amended Guidelines range. *Dillon v. United States*, 560 U.S. 817, 826-827 (2010). A defendant is only eligible for a §4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon*, 560 U.S. at 827.

Step two involves a court "consider[ing] any applicable §3553(a) factors and determin[ing] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 827. In so doing, a court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g., United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018).

If a court decides in its discretion to grant a sentence reduction, it generally may not reduce

---

[1] In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCrR 47(f).

the term of imprisonment to a term that is less than the minimum of the new guideline range, U.S.S.G. §1B1.10(b)(2)(A), and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. §1B1.10(b)(2)(C).

### III. ANALYSIS

The Court begins its two-step analysis by first considering whether Mr. Hernandez is eligible for a reduced sentence under §4C1.1. The Court notes that Defendant bears the burden in seeking such sentencing reduction. *See United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). In this case, there is no dispute that Mr. Hernandez did not receive any criminal history points and he meets most of the criteria of Section 4C1.1(a), but the Government disputes whether Defendant satisfies the criterion that he "did not use violence or credible threats of violence in connection with the offense." §4C1.1(a)(3).

**A. Step One**

Defendant argues that it is clear that Defendant did not use violence or credible threats in connection with his offense because this Court did not find the 8-level obstruction of justice enhancement under U.S.S.G. §2J1.2(b)(1)(B) applicable.[2] The Government asserts however that this argument "ignores" Defendant's actions, and the appropriate inquiry with regard to "use of violence or credible threats," involves looking at "[D]efendant's conduct on January 6, 2021." Govt. Opp'n, ECF No. 63, at 14. Defendant's argument based on non-application of the Section 2J1.2(b)(1)(B) enhancement is not persuasive because it is not focused on Defendant's conduct, which is the relevant inquiry. And in fact, in his Reply, Defendant focuses much of his argument on the specific behavior of defendants in various cases that involve application of Section 4C1.1.

---

[2] This provision provides for an eight-point enhancement "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." U.S.S.G. §2J1.2(b)(1)(B).

4

The Government proffers that Mr. Hernandez's "actions constituted a credible threat of violence to officers stationed at the Rotunda Doors."  Govt. Opp'n, ECF No. 63, at 14.  "In interpreting [the terms used in] the Sentencing Guidelines, the Court applies the ordinary tools of statutory interpretation and looks to the plain meaning of its terms." *United States v. Seefried*, 639 F. Supp. 3d 8, 10 (D.D.C. 2022) (string cite omitted). Plain meaning may be discerned by looking at the Guidelines' own definitions, if applicable.  The Court notes that the term "use violence" is undefined by the Sentencing Guidelines.

When no definitions are provided, the court may rely on dictionary definitions to determine meaning. *Kaufman v. Nielsen*, 896 F.3d 475, 485-87 (D.C. Cir. 2018).  Finally, courts may look also to precedent to see how other courts have interpreted similar words and phrases. *Seefried*, 639 F. Supp. 3d at 10.  A recent opinion by the Honorable Trevor McFadden (cited by Defendant) discusses dictionary definitions of violence in the context of application of Section 4C1.1, namely that violence is: "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *United States v. Bauer*, Criminal Case No. 21-386-2 (TNM), Mem. Op., ECF No. 195, at 4-5 (internal citations omitted).[3]

In the instant case, the Government proffers that "[f]rom the minute Hernandez decided to go around the dismantled metal barricades at the East Front of the Capitol and approach police lines, he was a threat to security of the officers and the Capitol."  Govt. Opp'n, ECF No. 63, at 14.  Furthermore, the Government asserts that the threat continued as Mr. Hernandez "moved at the

---

[3] In *Bauer*, Judge McFadden found that the defendant "both used violence and made credible threats of violence in connection with the offense," and was therefore ineligible for a two-point reduction under U.S.S.G. § 4C1.1.  Criminal Case No. 21-386-2, Mem. Order, ECF No. 195, at 9.

forefront of a crowd of rioters" that pushed and shoved officers and followed them as they retreated, broke windows and assaulted officers, rushing through the Rotunda doors after the officers were overwhelmed. *Id.*

Defendant focuses its discussion more pointedly on Mr. Hernandez's own actions. Defendant indicates that he attended the "Stop the Steal" rally, carrying a backpack and a U.S. flag on a pole with a GoPro camera attached. Def.'s Mot., ECF No. 62, at 5; *see* PSR at ¶17. Mr. Hernandez walked around bicycle barriers at the Capitol after they had been pushed down by others, and he was part of a crowd that made its way up the Rotunda step after others had breached the line of police officers, and he entered the Capitol after others had breached the East Rotunda door. Def.'s Mot., ECF No. 62, at 5-6; *see* PSR at ¶¶17-18. Defendant took a few selfies while others were shouting, and he left the Capitol shortly thereafter. Def.'s Mot., ECF No. 62, at 6; *see* PSR at ¶19.

This Court notes that it is clear that Mr. Hernandez took advantage of the violence of others to gain access to the Capitol. And it is clear that the insurrection as a whole was certainly violent, but it is not the violence of others or general crowd violence that is the focus of this Court's inquiry. *See United States v. Stewart Parks*, Criminal Case No. 21-411 (APM), Sentencing Transcript at 10 (Nov. 15, 2023) (where the Honorable Amit Mehta applied Section 4C1.1, with regard to a defendant whom the Government alleged was close to rioters who overran a group of officers, "notwithstanding [acknowledgment of] conduct that clearly contributed to the chaos and the mayhem of the day and did so in a significant way").[4] Without further explication of the definition of the "use of violence," this Court considers Mr. Hernandez's own conduct to determine whether

---

[4] The Sentencing Transcript is not available on the Court docket; this cite was provided by Defendant in its Motion and was not challenged by the Government in its Opposition.

he satisfies the criterion of not using violence or credible threats of violence. The Court "cannot simply impute the "use of violence" to a defendant based on the action of others." *United States v. Pauline Bauer*, Criminal Case No. 21-386, Mem. Order, ECF No. 195, at 8; *see also United States v. Issacs*, Criminal Case No. 22-338 (DLF) (where the Honorable Dabney Friedrich granted a two-level reduction under Section 4C1.1 to a defendant convicted of the same offense as Mr. Hernandez, "finding that the exclusionary criteria requiring that a defendant not use violence or credible threats of violence in connection with the offense' requires more than mere presence in the crowd")[5]; *see generally United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021) (in the context of a decision on pretrial detention, distinguishing January 6 rioters who "actually assaulted police officers and broke through windows, doors, and barricades. . . [from those ] "who cheered on the violence or entered the Capitol after others cleared the way").

The Government attempts to distinguish Mr. Hernandez's actions as more than "mere presence in the crowd," Govt. Opp'n, ECF No. 63, at 14 n.4. (referencing and attempting to distinguish *Isaacs*). In turn, Defendant cites from the Statement of Offense in the *Isaacs* case, ECF No. 34, at 4-5 (noting that Isaacs "joined the crowd gathered at the perimeter of the East Front of the Capitol's restricted perimeter, and they chanted and yelled at the officers who had the area barricaded," and Isaacs "joined the group of protesters in surging forward and advancing past the barricades" and observed "law enforcement officers physically engage with the crowd" and entered the Capitol despite "the efforts of law enforcement" and took photographs and videos inside before exiting). Def.'s Reply, ECF No. 64, at 3-4; *see also United States v. Sheppard*, No. 23-cr-203 (JDB), 2024 WL 127016, at *4 (D.D.C. Jan. 11, 2024) (finding that a defendant who was "among the first rioters to enter the Capitol," and who "joined others in overrunning police

---

[5] This information was provided in the Government's Opposition, ECF No. 63, at 14, n.4.

lines" and "looked on as other rioters violently punched out the windows of doors mere inches from officers' heads" would likely qualify for the two-level reduction). Defendant concludes that the "[G]overnment simply fails to explain how 'Mr. Hernandez's action and positioning' distinguish him in any meaningful way from M[s]. Isaac's," and this Court agrees that there is no real distinction. Accordingly, Mr. Hernandez is eligible for a Section 4C1.1 reduction because he meets all the criteria therein, including that the did not use "violence or credible threats in connection with the offense." The Court turns now to step two of its analysis.

### B. Step Two

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary" even when the guideline range is reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir, 1998); *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009) (affording the court "substantial discretion" in deciding whether to reduce a sentence). In this case, the Government argues that "the Section 3553(a) factors counsel against a sentence reduction" and more specifically, that the "nature and circumstances of Hernandez's actions and offense supported the sentence imposed," Govt. Opp'n, ECF No. 63, at 15, and that sentence should not be reduced.[6] The government focuses on the offense involving "disrespect for the law, Defendant's prior service in the military and having sworn an oath to uphold the constitution, and Defendant's alleged lack of remorse at the time of sentencing. Govt. Opp'n, ECF No. 63, at 15-16. Defendant points out that, at the time of sentencing, this Court was well-aware of the nature of the offense, including Defendant's actions taken on January 6, 2021, and his prior military

---

[6] These factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

8

service, and those factors weighed into imposing a mid-Guidelines range sentence of 18 months. The Guidelines range is now 10-16 months, and the Government has not proffered any convincing reason why the Court should not reduce Defendant's sentence, especially in this case when the only benefit Mr. Hernandez will receive is de minimis – a release from incarceration on February 1, 2024 as opposed to February 4, 2024.[7]

The Government notes further the need for deterrence of "future rioters and would-be mob participants." Govt. Opp'n, ECF No. 63, at 16.  The Government contends that "[g]iven the unprecedented nature of the Capitol attack, there is no reason to believe this historical data [on recidivism] is predictive of recidivism for defendants who engaged in acts of political extremism on January 6." *Id.*  Defendant counters that statement with the proffer that: "Part B was passed because recidivism data showed that *all* zero-point offenders differed meaningfully from those with countable criminal history. It did not matter their crime.  If they had zero points, across the board, they were less likely to recidivate." Def.'s Reply, ECF No. 64, at 7 (citing U.S.S.G. Supp. to App. C, Amendment 821, Reason for Amendment).  Defendant notes further that, with regard to consideration of post-sentencing behavior, Mr. Hernandez has not "receive[d] reprimands in the prison context," although it is "not unusual for inmates" to receive them.  Def.'s Reply, ECF No. 64, at 8 (quoting *United States v. Greene*, 516 F. Supp. 3d 1, 16 (D.D.C. 2021)); *see* Ex. B (inmate discipline data).   Upon consideration of the Section 3553(a) factors and other relevant considerations, this Court finds it appropriate to apply the Section 4C1.1 sentence reduction to Mr. Hernandez.  Accordingly, it is this 31st day of January 2024,

ORDERED that Defendant's [62] Emergency Motion to Reduce Sentence is GRANTED.

---

[7] It is Defendant's position that he would have been entitled to a 5-month reduction if the Court imposed a new sentence at the mid-point of the revised Guidelines range [13 months instead of 18 months].

9

A separate Order, effective February 1, 2024, will be issued to reflect the change in Defendant's sentence, to time served.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE