UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Case No. 21-cr-445-CKK |
| | : |
| ANDREW A. HERNANDEZ, | : |
|                 *Defendant.* | : |
| | : |

**DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF
PURSUANT TO 28 U.S.C. § 2255**

The Defendant, Andrew Hernandez, by and through counsel, respectfully moves this Court to vacate, set aside, or correct his sentence pursuant to Title 28, United States Code, Section 2255.

**RELEVANT PROCEDURAL HISTORY**

On June 30, 2021, Mr. Hernandez was charged by Indictment with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, a felony; with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), a misdemeanor; with disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. 1752(a)(2), a misdemeanor; with entering and remaining in the gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B), a misdemeanor; with disorderly conduct in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D), a misdemeanor; and with parading, demonstrating, or picketing in a capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), a misdemeanor. (ECF No. 19.)

On September 21, 2022, Mr. Hernandez pleaded guilty to one count of aiding and abetting obstruction of an official proceeding, in violation of 18 U.S.C. § § 1512(c)(2) and 2. (ECF 47.) On January 30, 2023, this Court sentenced Mr. Hernandez to a term of imprisonment

of 18 months, followed by 36 months of supervised release. (ECF No. 59.)

On June 28, 2024, the United States Supreme Court issued a ruling in *United States v. Fischer* and held that:

> To prove a violation of § 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding, or attempted to do so.

603 U.S. __ (2024) (Op. at p. 20.).

On February 1, 2024, Mr. Hernandez was released from the Bureau of Prisons after serving his term of imprisonment. Mr. Hernandez is now serving his term of supervised release and asks this Court to vacate his conviction under 18 U.S.C. § 1512 on the grounds that the conduct to which he admitted in the Statement of Offense does not constitute an offense under § 1512(c)(2) following *Fischer* and the fact that the plea agreement was not entered into knowingly and voluntarily and there was no factual basis for the plea in light of the *Fischer* decision.

## POST CONVICTION RELIEF IS WARRANTED

### A.   Legal Standard for Relief Under Section 2255

A defendant may move to vacate, set aside, or correct his sentence if his sentence was imposed in violation of the Constitution or laws of the United States, if the court lacked jurisdiction to impose the defendant's sentence, if the sentence imposed exceeded the statutory maximum, or if the sentence imposed is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The defendant bears the burden of proving his right to relief by a preponderance of evidence. *United States v. Pollard*, 602 F.2d 165, 168 (D.D.C 2009). Specifically, he "must show a fundamental defect, which inherently results in a complete miscarriage of justice' or 'an

omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

### B. The Petition for *Habeas Corpus* Relief is Timely Filed and is Not Procedurally Defaulted

In order to obtain collateral relief from a conviction pursuant to 28 U.S.C. § 2255 under the exception to the procedural-default rule, a defendant must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This higher hurdle can be met by establishing actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998), or cause for the default and actual prejudice resulting from the error, *Frady*, 456 U.S. at 167-68.

As a preliminary matter, this motion is both timely filed and not moot. Section 2255 contains a one-year period of limitation for motions filed by the defendant which, in this case, runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

Under this provision, Mr. Hernandez's motion is timely filed. The United States Supreme Court ruling in *Fischer* that limited the scope of § 1512(c)(2) to conduct affecting records, documents, or objects used in official proceedings was decided on June 28, 2024—less than one year from the filing of this motion. As discussed in detail below, the decision should be applied retroactively. Therefore, Mr. Hernandez's petition for *habeas corpus* relief is timely filed. Further, the expiration of Mr. Hernandez's term of incarceration does not moot this motion because his conviction carries collateral consequences, including the term of supervised release. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *Hamdan v. United States*, 696 F.3d 1238, 1244-45 (D.C. Cir. 2012); *United States v. Maddox*, 48 F.3d 555, 560 (D.C. Cir.

1995).

### a. There is Cause and Actual Prejudice

The first exception to the procedural default rule is cause and prejudice. A defendant may show cause to excuse a procedural lapse, like the lack of a direct appeal, by showing any reasonable unavailability of a legal defense, any reasonable unavailability of a factual defense, or any governmental interference. Here, the defense that Mr. Hernandez's actions on January 6 did not constitute obstruction for purposes of 18 U.S.C. § 1512(c)(2) was not available because *Fischer* was not yet decided. Mr. Hernandez pled guilty on September 22, 2022, and was sentenced on January 30, 2023, which was well over a year before the Supreme Court decided *Fischer*. (ECF Nos. 47 and 59.) Because this defense, which would have resulted in Mr. Hernandez not pleading guilty to the § 1512 charge, was unavailable at the time of his plea agreement and sentencing, there is cause for him to now collaterally attack his conviction on *habeas* grounds.

A defendant meets the prejudice element by showing actual prejudice resulting from the errors of which the defendant complains that infect the proceedings. *United States v. Frady*, 456 U.S. 152, (1982). Mere possibilities of prejudice are not sufficient; rather, the defendant must show that the errors "worked to his actual and substantial disadvantage." *Id*. Mr. Hernandez clearly shoulders his burden of showing actual prejudice. He does not claim some procedural default that may or may not have changed the outcome of his plea agreement with the Government. Instead, he points to the fact that the Supreme Court has held that his conduct, as described in the Statement of Offense, no longer supports a conviction under 18 U.S.C. § 1512(c)(2). His conviction has led to a felony record and the collateral consequences that flow from it when now, the Government could only move forward with the less serious misdemeanor

charges.

Because Mr. Hernandez has demonstrated both cause and actual prejudice, his Motion falls within the exception to the procedural default rule and, on this ground alone, his Motion is not procedurally defaulted. Nevertheless, Mr. Hernandez can also demonstrate that his Motion falls within the second exception to the procedural default rule because he is actually innocent.

### b.  Mr. Hernandez is Actually Innocent of a Violation of 18 U.S.C. § 1512(c)(2)

The second exception to the procedural default rule is actual innocence. Although Mr. Hernandez has already shown that he satisfies the cause-and-prejudice exception to the procedural default rule, so he need not make a showing of actual innocence, he also satisfies the actual innocence exception to the rule. In order to establish actual innocence, a defendant must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Actual innocence "may be achieved by demonstrating (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner has had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." *Wooten v. Cauley*, 677 F.3d 303, 307-8 (6th Cir. 2012). Moreover, when the Government has foregone more serious charges in the course of plea bargaining, the petitioner must show that he is actually innocent of both the charge he was convicted of and the foregone charges of equal or greater seriousness. *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Mr. Hernandez can demonstrate all four parts of a showing of actual innocence because there is a new interpretation of statutory law, it was issued after his proceedings were complete,

the *Fischer* decision is retroactive, and because no reasonable juror would convict Mr. Hernandez in light of *Fischer*.

1. *The Existence of a New Interpretation of Statutory Law*

The *Fischer* decision enunciated the existence of a new interpretation of statutory law. Section 1512 provides:

> "(c) Whoever corruptly—
> "(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> "(2) otherwise obstructs, influences, or impedes any official proceeding or attempts to do so,
> "shall be fined…or imprisoned not more than 20 years, or both."

18 U.S.C. § 1512.

Prior to the *Fischer* holding, subsection (c)(2) was believed to broaden the scope of conduct captured by subsection (c)(1), but the *Fischer* Court held that subsection (c)(2) in conjoined with the preceding subsection. *Fischer v. United States*, 603 U.S. ___ (2024) (Op. at p. 20.) The Court clarified that subsection (c)(2) is limited by the language of (c)(1), thereby proscribing a new interpretation of statutory law. Therefore, Mr. Hernandez has satisfied this prong by showing that there is a new statutory interpretation.

2. *Interpretation Issued After Petitioner Has Had Meaningful Time to Incorporate the New Interpretation into His Direct Appeals or Subsequent Motions*

It is clear that Mr. Hernandez could not have raised the defense that his conduct no longer constitutes a crime under the *Fischer* interpretation in his prior proceedings. Proceedings in this matter were complete on January 30, 2023, and the *Fischer* decision was not filed until June 28, 2024. Not only that, but Mr. Hernandez also waived his right to direct appeal in his plea agreement, so he could not have raised that defense on direct appeal either. (ECF No. 47.)

Therefore, Mr. Hernandez has satisfied this prong by showing that the interpretation was issued after his proceedings had ended.

3. *The Interpretation is Retroactive*

Under *Teague* and its progeny, the decision in *Fischer* applies retroactively because it concerns a substantive change in the law.  Under *Teague*, new constitutional rules do not apply retroactively to cases on collateral review unless they fall within one of two exceptions: the new rule is substantive, or it is a watershed rule of criminal procedure. *Teague v. Lane*, 489 U.S. 288, 311 (1989).  A new rule that places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" is a substantive rule. *Id* (quoting *Mackey*, 401 U.S. at 692).  This principle that substantive rules apply retroactively has been reaffirmed numerous times. *See Schiro v. Summerlin*, U.S. (2004), *Montgomery v. Louisiana*, U.S. (2016).

Because the *Fischer* decision narrows the interpretation of § 1512 (c)(2), which effectively decriminalizes certain conduct previously believed to be penalized under this statute, *Fischer* constitutes a substantive rule change that should be applied retroactively.  The *Fischer* decision does not create a niche procedural rule that would typically be appealed directly; rather, the decision is fundamental to the conviction and the Government's ability to even criminalize under the statute of conviction the conduct Mr. Hernandez admitted to.  Therefore, the *Fischer* interpretation is a substantive change and is retroactive.

4. *It Is More Likely Than Not That No Reasonable Juror Would Have Convicted Him*

*Fischer*'s interpretation of § 1512(c)(2) applies to the merits of Mr. Hernandez's case to make it more likely than not that no reasonable juror would convict him.  Here, if the case went to trial, the Government would be unable to prove that Mr. Hernandez's actions on January 6

7

defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding. Even assuming *arguendo* that the counting of the Electoral College votes on January 6 was an official proceeding for purposes of § 1512, his conduct did not involve records, documents, objects, or other things.

Although Mr. Hernandez does not attempt to minimize his conduct on that day, it cannot be said that he had anything to do with documents, objects, or other things. The Statement of Offense makes no reference to Mr. Hernandez affecting records, documents, objects, or other things. (ECF No. 46.) Therefore, Mr. Hernandez has satisfied this prong by showing that it is more likely than not that no reasonable juror would have convicted him following the *Fischer* decision.

5. *The Government Did Not Forego More Serious Charges in the Course of Plea Bargaining*

The Government did not forego more serious charges in the course of plea bargaining, so Mr. Hernandez's showing of actual innocence on the § 1512(c)(2) charge has satisfied his burden of showing actual innocence. When the Government foregoes charges of equal or greater seriousness, the petitioner must prove actual innocence both to the offense of conviction and the other foregone offenses. *Bousley v. United States*, 523 U.S. 614, 624 (1998). However, "if the only uncharged offense[s are] less serious than the offense of conviction, it would be plainly unfair to force the defendant to suffer the greater penalty associated with a crime of which he can demonstrate his innocence." *United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013). This means that if "no 'more serious' charges were waiting in the wings, the defendant need only demonstrate his actual innocence of the charge of conviction." *Id*. at 227. The appropriate measure for seriousness is determined by referencing the Sentencing Guidelines, not the statutory maxima associated with the charges. *Id*.

Under the United States Sentencing Guidelines, U.S.S.G. § 2J1.2 applies to a violation of 18 U.S.C. § 1512(c)(2). The base offense level for § 2J1.2(a) is 14, and the specific offense characteristic under § 2J1.2(b)(2) applies for substantial interference with the administration of justice, which adds 3 levels. This yields a total offense level of 17 for charge of conviction. These calculations for the offense of conviction were agreed to by the Government and Mr. Hernandez. (ECF No. 47.)

U.S.S.G. § 2B2.3 applies to the dismissed charges for violations of 18 U.S.C. § 1752(a)(1) and (a)(2). The base offense level for § 2B2.3 is 4, and the specific offense characteristic under § 2B2.3(b)(1)(A)(vii) applies for the trespass occurring at any restricted building or grounds, which adds 2 levels. This yields a total offense level of 6 for the foregone charges under 18 U.S.C. § 1752(a)(1) and (a)(2).

Finally, the Sentencing Guidelines do not apply to the remaining foregone charges for violations of 40 U.S.C. 5104(e)(2)(B), (D), and (G), since they are Class B Misdemeanors.

Because the charges that were foregone by the Government in the course of plea bargaining were less serious as measured by the Sentencing Guidelines, Mr. Hernandez has properly proven actual innocence to the most serious charge (which was the charge he pled guilty to), and he does not need to prove actual innocence of the foregone charges.

Mr. Hernandez has made sufficient showings under each exception to the procedural default rule by showing both cause and prejudice and actual innocence of the most serious charge. Therefore, this Motion is proper because it is timely filed and not procedurally defaulted.

  **C.**  **The Collateral Challenge Waiver Should Not Bar Review**

The plea agreement signed by Mr. Hernandez included a waiver of his right to file any

collateral attack with limited exceptions. In relevant part, the plea agreement reads:

> Your client also waives any right to challenge the conviction entered or sentenced imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined by any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. Your client also reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2).

ECF No. 47.

The waiver should not bar collateral review because, like the plea itself, the waiver was invalid as it was not made knowingly, intelligently, or voluntarily, and because the waiver would result in a miscarriage of justice.

1. *Mr. Hernandez Did Not Enter his Waivers Knowingly, Intelligently, or Voluntarily*

A "knowing, intelligent, and voluntary" waiver will generally be enforced. *United States v. Guillen*, 561 F.3d 527, 529-30 (D.C. Cir. 2009) (citations omitted). But like the plea itself, Mr. Hernandez did not enter into the waiver provisions of his plea agreement knowingly, intelligently, or voluntarily. When it is apparent that "the defendant knows what he is doing and his choice is made with eyes open, then the court will enforce an anticipatory waiver." *Id*. However, "an appeal waiver or collateral attack waiver which is part of a guilty plea is *unenforceable* if the plea itself is involuntary or unintelligent." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (emphasis added).

"Waivers of appeal must stand or fall with the agreements of which they are a part." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). *See also United States v. Carreon-Ibarra*, 673 F.3d 358, 362 n.3 (5th Cir. 2012) (appeal waiver "cannot be enforced 'to bar a claim that the waiver itself—or the agreement of which it was a part—was unknowingly or involuntary); *United States v. Hernandez*, 242, F.3d 110, 113 (2d Cir. 2001) (explaining that a

10

court will not enforce a waiver of appellate rights where a defendant challenges "the constitutionality of the process by which he waived those rights"); *De Roo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek…post-conviction relief does not waive [the] defendant's right to argue…that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *United States v. Ataya*, 869 F.3d 401, 402 (6th Cir. 2017) (explaining that the enforceability of the appellate waiver stands or falls with the validity of the agreement).

At the same time, an appeal waiver does not bar a Rule 11 claim that there is an insufficient factual basis to support a guilty plea, since such a claim "goes to the heart of whether [the] guilty plea, including the waiver of appeal, is enforceable." *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999); *see also United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008); *United States v. Adams*, 448 F.3d 492, 497-98 (2d Cir. 2006). "In cases where a defendant argues that his plea was not knowing or voluntary…it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007).

If the agreement was involuntary or otherwise unenforceable, then "the defendant is entitled to appeal [and collateral review]." *Wenger*, 58 F.3d at 282; *see also United States v. Lara-Joglar*, 400 F. App'x 565, 566 (1st Cir. 2010) (unpublished) ("[I]f the guilty plea or the plea agreement as a whole is invalid, the n the appeal waiver provision of the agreement is obviously invalid as well."); *United States v. Roque*, 421 F.3d 118, 121 (2d Cir. 2005) (holding that a plea agreement waiver "does not…act as a waiver against an appeal on the basis that the plea itself, including the waiver, was not intelligent or voluntary.").

Mr. Hernandez relied upon the advice of his counsel, the representations of the government, and the assertions by the district court that his entering the Capitol Building alone, without any mention of any documents, records, or other things, was sufficient to establish his guilt. In light of *Fischer*, it cannot be contested that Mr. Hernandez was misinformed about the true nature of the obstruction charge against him. His eyes were closed. At the time he agreed to the waivers, he believed it when he was told that he was guilty when, we know now, that he was actually innocent on that charge. Therefore, the waiver of collateral attack was invalid as well, and it should not be enforced to bar collateral review of Mr. Hernandez's conviction.

2. *Enforcement of a Collateral Waiver to Sustain an Innocent Person's Conviction Would Constitute a Miscarriage of Justice*

A valid waiver should be enforced when it was made knowingly, intelligently, and voluntarily, *Khadr v. United States*, 67 F.4th 413, 424 (D.C. Cir. 2023), but not if its enforcement would result in a miscarriage of justice. *See United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir 2009) (adopting a miscarriage of justice exception in the context of pre-sentence waivers). The conviction and punishment of an innocent person constitutes a fundamental miscarriage of justice. *Cf. McQuiggen v. Perkins*, 596 U.S. 383, 392 (2013). Even if the Court finds that the plea agreement waiver is valid post-*Fischer*, it should nevertheless grant relief to avoid a miscarriage of justice.

The D.C. Circuit has adopted a "miscarriage of justice" exception, but to date has only applied it in the context of pre-sentence waivers. *See Guillen*, 561 F.3d at 530-31; *United States v. Adams*, 780 F.3d 1182, 1184. However, sister circuits have had the opportunity to more fully develop their jurisprudence concerning what they believe to be a miscarriage of justice which always includes actual innocence. *See United States v. Gil-Quezada*, 455 F.3d 33, 37 (1st Cir. 2006); *Adams*, 814 F.3d at 182; *Oliver v. United States*, 951 F.3d 841, 847 (7th Cir 2020);

*United States v. Miles*, 546 F. App'x 730, 733 n.1 (10th Cir. 2012); *United States v. Betram*, 762 F. App'x 1, 4 (D.C. Cir. 2019) (unpublished).

As argued below, Mr. Hernandez is actually innocent of the 1512 charge that he pled guilty to. After the United States Supreme Court clarified and narrowed in *Fischer* the elements required for a 1512 conviction, it is clear that Mr. Hernandez's conduct does not satisfy all the elements. Therefore, because Mr. Hernandez is actually innocent of the charge against him, the Court should not enforce the collateral challenge waiver in his plea agreement since doing so would be a miscarriage of justice.

>    D.   **Mr. Hernandez's Guilty Plea Was Not Voluntary and Intelligent and Was Without a Factual Basis**

A plea of guilty is constitutionally valid only when it is "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 746 (1970). A plea is not "intelligent" unless a defendant receives "real notice of the true nature of the charge against him." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Here, Mr. Hernandez's guilty plea was not intelligently made because he did not receive real notice of the true nature of the charge against him.

In *Henderson v. Morgan*, the Supreme Court granted *habeas* relief to a defendant who pled guilty to second degree murder who was not informed that the intent element was an essential element of the offense. 426 U.S. 637, 647 (1976). The Court noted that a plea cannot support a conviction unless "the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process,'" *Id*. At 644-45 (quoting *Smith v. O'Grady*, 312, U.S. 329, 334), because such a plea is not voluntary in a constitutional sense because it was not an intelligent admission to the offense.

Here, Mr. Hernandez was not advised that a necessary element of the offense was the intent to corruptly obstruct, influence, or impede an official proceeding by tampering with

13

documents, records, or other objects. He was not advised of this necessary element because, at the time of his plea agreement and sentencing, the prevailing understanding of the law was not correct. Now, post *Fischer*, we know to be true that an essential element of a § 1512(c)(2) offense involves interfering with the processing of such documents, records, or other objects. Because Mr. Hernandez was not advised of this necessary element, he did not admit to an essential element of the offense in his plea agreement. Therefore, Mr. Hernandez's guilty plea was not intelligently made.

While Mr. Hernandez does not contest the factual allegations contained within the Plea Agreement's Statement of Offense, he does contend that the guilty plea that resulted in his conviction of a § 1512(c)(2) offense is void of a factual basis given the *Fischer* decision's effect of limiting the scope of conduct penalized by that subsection. Under the statutory interpretation enunciated by *Fischer*, Mr. Hernandez's actions on January 6, 2021, cannot support a conviction under the statute and no reasonable jury would convict him. The Statement of Offense reads, in relevant part:

> 10. At approximately 2:06 pm, protestors breached the line of the U.S. Capitol police at the Center Steps of the East Plaza. Defendant Hernandez was part of the crowd making its way up the stairs and pushing towards the Rotunda door.
> 11. On January 6, 2021, at approximately 2:30 pm, a short time after the East Rotunda door was initially breached, defendant Hernandez entered the Capitol. Defendant Hernandez shouted along with the crowd as he entered and then went up the stairs to the south of the door – away from the Rotunda. Defendant Hernandez then made his way down a southeast corridor and into the Senate Gallery. After entering the Senate Gallery, defendant Hernandez stood a few feet inside the door and then moved down towards the railing overlooking the Senate chamber. While Hernandez stood in the Senate Gallery, others yelled, amongst other things, "treason." Defendant Hernandez was inside the Senate Gallery from approximately 2:43 pm to 2:45 pm and took a few "selfies" of himself inside the Senate Gallery. Defendant Hernandez then went out the same Senate Gallery door and down the corridor. He proceeded down the stairs and left the Capitol through the Rotunda door at around 2:51 pm. In total, defendant Hernandez was in the Capitol for approximately fourteen minutes.

ECF No. 46.

It is clear that Mr. Hernandez's actions, as stipulated in the Statement of Offense, do not establish that Mr. Hernandez impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding, or attempted to do so. Because his actions do not fall within the scope of § 1512(c)(2), there is no factual basis for a finding of guilt under § 1512(c)(2).

Finally, Mr. Hernandez is in a unique position in that he pled guilty and was convicted of the most serious charge related to his actions on January 6, 2021—a position that only 25 other January 6 defendants share. Mr. Hernandez is even unique among this subset of defendants because he has also already completely served his term of imprisonment. Therefore, deciding that Mr. Hernandez's § 1512(c)(2) conviction ought to be vacated would not have an unanticipated widespread effect of calling into question other January 6 defendants' convictions secured by plea agreements.

After all, the vast majority other defendants charged under § 1512(c)(2) settled on deals with the Government to forgo more serious charges. Furthermore, many January 6 defendants committed criminal conduct that can be charged under other statutes of equal or greater seriousness to § 1512(c)(2), but again that is not the case with Mr. Hernandez. Mr. Hernandez has shown, by a preponderance of the evidence, that the fundamental defect in his case—namely that his conduct is outside the scope of conduct penalized by 18 U.S.C. § 1512(c)(2) in light of *Fisher*—results in a complete miscarriage of justice should his conviction under this statute stand. Not only that, Mr. Hernandez has shown, by a preponderance of the evidence, that his plea was not knowing and intelligent and was without a factual basis in light of *Fischer*.

15

## CONCLUSION

For all the reasons set forth herein, Defendant Andrew Hernandez respectfully requests that this Motion be granted pursuant to 28 U.S.C. § 2255, that his conviction for aiding and abetting obstruction of an official act or proceeding be vacated, and that his supervised release be terminated.

Dated: January 18, 2025

Respectfully submitted,

Andrew Hernandez
*By Counsel*

  /s/Samuel Moore
Samuel C. Moore
D.C. Bar No. 1015060
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@moorechristoff.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January, 2025, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

>Diane G. Lucas
>U.S. Attorney's Office for the District of Columbia
>555 Fourth Street, NW
>Washington, DC 20530
>(202) 252-7724
>Fax: (202) 514-9155
>Email: diane.lucas@usdoj.gov

>　/s/Samuel Moore
>Samuel C. Moore
>D.C. Bar No. 1015060
>Moore, Christoff & Siddiqui, PLLC
>526 King St., Suite 506
>Alexandria, VA 22314
>scmoore@moorechristoff.com
>Phone: 703-535-7809
>Fax: 571-223-5234
>*Counsel for the Defendant*